UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

MARIE ELLIOTT, et al.,                    No. 2:12-cv-00117-MCE-DAD

        Plaintiffs,

    v.                                    <u>MEMORANDUM AND ORDER</u>

AMADOR COUNTY UNIFIED
SCHOOL DISTRICT, et al.,

        Defendants.

----oo0oo----

    Plaintiffs Marie Elliott ("Elliott"), Andrea Kruse
("Kruse"), Patricia Roots ("Roots") and Randi Wilson ("Wilson")
(collectively, "Plaintiffs") initiated this action against
Defendants Amador County Unified School District ("ACUSD" or the
"District"), Amador County Office of Education ("ACOE") and
Theresa Hawk ("Hawk") (collectively, "Defendants") alleging
violations of both state and federal law arising primarily out of
Plaintiffs' claims that they were retaliated against for
complaining to their employers about deficient special education
programs and facilities being offered or provided to students.
///

1

Presently before the Court are Defendants' Motion to Dismiss Plaintiffs' state claims and Plaintiffs' prayer for punitive damages as well as Defendants' Motion to Strike a particular allegation repeated throughout Plaintiffs' Complaint.  For the following reasons, Defendants' Motion to Dismiss is GRANTED in part and DENIED in part, and Defendants' Motion to Strike is GRANTED.[1]

**BACKGROUND[2]**

At the time of the events alleged in the Complaint, Plaintiff Elliott was a special education teacher employed within the ACUSD.  Elliott served as a program instructor in a structured day class for special needs students who are autistic or display autistic-like behaviors.  The remaining Plaintiffs were employed within the ACUSD as Elliott's teacher's aides. Plaintiffs all had excellent working relationships, and thus allege that Defendants knew any retaliation against one Plaintiff would be perceived by all Plaintiffs to be directed at each of them individually.

///
///
///
///

[1] Because oral argument will not be of material assistance, the Court ordered this matter submitted on the briefing.  E.D. Cal. R. 230(g).

[2] The following facts are derived, at times verbatim, from Plaintiffs' Complaint.

2

Defendant Hawk served the entity Defendants as the Executive Director of Special Education and thus was Elliott's supervisor. According to Plaintiffs, at all relevant times Defendant Hawk was acting under color of law and her conduct was undertaken in the performance of her official duties for the entity Defendants.

Very generally, as is relevant to the instant Motions, Plaintiffs aver that Defendants coerced them to violate the law and to refrain from exercising their statutory rights and duties regarding the needs of their students.  In addition, Plaintiffs contend that when they refused to succumb to Defendants demands, they were repeatedly subjected to various forms of retaliation. While it is unnecessary for purposes of the instant Motions to repeat all of the facts set forth in the Complaint, a few particularly important retaliation-related averments follow.

First, Plaintiffs contend that Defendant Hawk asked Elliott to attend a "strategy meeting" at which Hawk advised Elliott the District was terminating services with a provider whose services were mandated by various student Individualized Education Programs ("IEP").  IEPs are education plans mandated by state and federal law, as well as by District policies and procedures, to meet unique educational needs of special needs students.  These plans cannot be unilaterally created or modified, but instead may only be created and modified pursuant to IEP procedures.  Hawk informed Elliott that the ACUSD was making its provider change outside of the IEP procedural process, but nonetheless proceeded to direct Elliott to support the District's decision, regardless of whether Elliott actually believed the change to be in any particular student's best interests.

In addition, Elliott was later advised she would be labeled "insubordinate" if she failed to support the District's IEP offer to one student, and a district psychologist also demanded that Elliott complete IEP forms in advance of meetings rather than during meetings, as was required by the law and district policies and procedures.  That same psychologist advised Elliott she needed "to get on board with Hawk."

As a consequence, Elliott filed a complaint with the ACOE against the psychologist and Hawk.  Plaintiffs believe all Defendants were aware of this complaint, and, despite being named in that charge, Hawk was assigned to conduct the relevant investigation.

Subsequently, Defendants began to exclude Elliott from participating in the assessment of preschoolers for placement in her class.  Defendants also discouraged third-party assessors from placing students with Elliott.  Defendants then started refusing to provide Elliott with substitute teachers, substitutes she needed so she could attend meetings or training sessions. Defendants also refused to provide substitutes for Elliott's aides, which left Elliott's classroom understaffed.

Eventually, Hawk informed Elliott that she and a number of her students were being transferred from the Jackson Structured Autistic Program to the Severely Handicapped Special Day Class in Plymouth, California.  This transfer was from one side of the county to the other and increased Elliott's commute twenty-five minutes each way.  More importantly, Hawk purportedly ordered Elliott to falsely inform parents that the move did not constitute a change to student IEPs.

4

When Elliott's class was subsequently moved to the Plymouth location, she was given inadequate time to prepare, which resulted in a number of classroom items being left behind. Moreover, the classroom to which Elliott was re-assigned was known to be the worst room in the District.  It had not been used for instruction in over six years, and prior occupants had become sick after spending too much time in the space.  The space itself was oddly shaped, dark and cramped, making it difficult for staff to see and monitor students from most vantage points in the room. The toilets were duct taped together, and unfit for use, and the room was connected via a ventilation system to containers the District used to store volatile materials.  The room had a sickening odor and it was soon discovered through a hole in the ceiling that it was inhabited by rodents and filled with rodent feces.  The room had also been subject to water and mold damage.

Elliott consequently filed a complaint with the California Office of Civil Rights, and Plaintiffs Kruse and Wilson spoke out at a school board meeting against Defendants' transfer of Elliott's students to Plymouth, after which the District refused to provide basic sanitary supplies, such as sanitizing spray, covered garbage cans, or a broom and dustpan, for Elliott's classroom.  One of the toilets remained broken, and all highchairs were removed from the room.  Plaintiffs and a number of students suffered injuries and illness as a result of the conditions at the Plymouth site.

///
///
///

Plaintiffs thus continued to complain about the above conditions, but Defendants never took any adequate measures to rectify the situation.  Instead, Defendants continued to retaliate against Plaintiffs by, for example, requiring Elliott to pre-authorize her opinions with the ACUSD prior to meeting with any parents, denying Kruse's son, a student in the district, proper placement and assistance, informing Wilson she would no longer be able to ride the student van to and from work, and, ultimately, transferring Elliott's aides out of her class. Defendants then provided Elliott with two new aides who were not allowed to attend students' toileting needs.  Defendants further demanded Elliott work through breaks because students could not be left alone with the new aides.

Elliott was eventually forced to take a medical leave of absence due to the unhealthy conditions in her classroom, and she ultimately announced her retirement, which would become effective at the end of the academic year.  Within approximately one week of her announcement, Kruse, Roots and Wilson were transferred back to Elliott's class at the Plymouth school, at which time the class was being relocated to a new larger classroom and was being taught by a newly-hired teacher.[3]

As a result of the above conduct, and a litany of other things, Plaintiffs served a claim on the Amador County Board of Supervisors pursuant to the California Government Claims Act ("GCA"), California Government Code §§ 810, et seq.

///

---

[3] It is unclear from the Complaint, but it appears to the Court Elliott was still on medical leave at this time.

In addition, the day before filing their instant Complaint, Plaintiffs served on their supervisor, a school administrator, or the public school employer a Complaint to Law Enforcement ("Law Enforcement Complaint") pursuant to California Education Code § 44114 alleging actual or attempted acts of reprisal, retaliation, threats, coercion, or similar improper acts prohibited by section 44113.  Plaintiffs subsequently initiated this case alleging causes of action for: 1) breach of contract (First and Second Causes of Action); 2) violation of Education Code § 44113 (Third Cause of Action); 3) violation of Education Code § 44114 (Fourth Cause of Action); 4) violation of Education Code §§ 210, 220, 221.1, 262.3, 262.4 (Fifth Cause of Action); 5) violation of Labor Code § 1102.5 (Sixth Cause of Action); 6) violation of Labor Code §§ 6400, et seq. (Seventh Cause of Action); 7) retaliation in violation of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, et seq. (Eighth Cause of Action); and 8) violation of the First Amendment, 42 U.S.C. § 1983 (Ninth Cause of Action).

On February 21, 2012, Defendants moved to dismiss Plaintiffs' state law causes of action because, among other things, Plaintiffs allegedly failed to file a proper claim with Defendants as required by the GCA, because the entity Defendants cannot be held liable for punitive damages as a matter of law and because insufficient facts have been alleged against Defendant Hawk to subject her to punitive damages as well.  Defendants also filed a Motion to Strike as redundant a sentence repeated with only minor variation at least forty-seven (47) times throughout the Complaint.

For the following reasons, Defendants' Motion to Dismiss is GRANTED in part and DENIED in part, and Defendants' Motion to Strike is GRANTED.

**STANDARD**

**A.    Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6).**

On a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6),[4] all allegations of material fact must be accepted as true and construed in the light most favorable to the nonmoving party. Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996). Rule 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the...claim is and the grounds upon which it rests.'" Bell. Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).  A complaint attacked by a Rule 12(b)(6) motion to dismiss does not require detailed factual allegations. Id. However, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. (internal citations and quotations omitted).  A court is not required to accept as true a "legal conclusion couched as a factual allegation."

///

---

[4] All further references to "Rule" or "Rules" are to the Federal Rules of Civil Procedure unless otherwise noted.

<u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949-50 (2009) (quoting <u>Twombly</u>, 550 U.S. at 555).  The Court also is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  <u>In re Gilead Sciences Sec. Litig.</u>, 536 F.3d 1049, 1055 (9th Cir. 2008) (internal citations and quotations omitted).  "Factual allegations must be enough to raise a right to relief above the speculative level."  <u>Twombly</u>, 550 U.S. at 555.

Furthermore, "Rule 8(a)(2)...requires a 'showing,' rather than a blanket assertion, of entitlement to relief."  <u>Twombly</u>, 550 U.S. at 556 n.3 (internal citations and quotations omitted).  "Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirements of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests."  <u>Id.</u> (citation omitted).  A pleading must contain "only enough facts to state a claim to relief that is plausible on its face."  <u>Id.</u> at 570.  If the "plaintiffs...have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed."  <u>Id.</u>  However, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'"  <u>Id.</u> at 556 (quoting <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236 (1974)).

///
///
///
///
///

A court granting a motion to dismiss a complaint must then decide whether to grant a leave to amend.  Leave to amend should be "freely given" where there is no "undue delay, bad faith or dilatory motive on the part of the movant,...undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment...."  <u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962); <u>Eminence Capital, LLC v. Aspeon, Inc.</u>, 316 F.3d 1048, 1052 (9th Cir. 2003) (listing the <u>Foman</u> factors as those to be considered when deciding whether to grant leave to amend). Dismissal without leave to amend is proper only if it is clear that "the complaint could not be saved by any amendment."  <u>Intri-Plex Techs., Inc. v. Crest Group, Inc.</u>, 499 F. 3d 1048, 1056 (9th Cir. 2007) (internal citations and quotations omitted).

## B.    Motion to Strike Pursuant to Federal Rule of Civil Procedure 12(f).

The Court may strike "from a pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. Pro. 12(f).  The "function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial...."  <u>Sidney-Vinstein v. A.H. Robins Co.</u>, 697 F.2d 880, 885 (9th Cir. 1983).  "Immaterial matter is that which has no essential or important relationship to the claim for relief or the defenses being pleaded."  <u>Fantasy, Inc. v. Fogerty</u>, 984 F.2d 1524, 1527 (9th Cir. 1993) (<u>rev'd on other grounds Fogerty v. Fantasy, Inc.</u>, 510 U.S. 517 (1994)) (internal citations and quotations omitted).

10

"'Redundant' allegations are those that are needlessly repetitive or wholly foreign to the issues involved in the action." California Dept. of Toxic Substances Control v. Alco Pacific, Inc., 217 F. Supp. 2d 1028, 1032-33 (C.D. Cal. 2002).

## ANALYSIS

### A.   Defendants' Motion to Dismiss Plaintiffs' First Through Seventh Causes of Action.

Defendants move to dismiss Plaintiffs' first through seventh causes of action, namely their state law claims, for failure to comply with California's GCA.  Before bringing a suit against a public entity, the GCA requires "the timely presentation of a written claim and the rejection of the claim in whole or in part."  Mangold v. California Pub. Utils. Comm'n, 67 F.3d 1470, 1477 (9th Cir. 1995).  Claims must also be presented prior to bringing suit against a public employee who is alleged to have caused injury while acting within the scope of his or her employment.  Briggs v. Lawrence, 230 Cal. App. 3d 605, 612-13 (1991).  "[T]he claims-presentation requirements serve two basic purposes: First, they give the governmental entity an opportunity to settle just claims before suit is brought.  Second, they permit the entity to make an early investigation of the facts on which a claim is based, thus enabling it to defend itself against unjust claims and to correct the conditions or practices which gave rise to the claim."  Lozada v. City and County of San Francisco, 145 Cal. App. 4th 1139, 1151 (2006) (internal citations and quotations omitted).

///

11

A plaintiff must allege facts demonstrating either compliance with the GCA requirement or an excuse for noncompliance as an essential element of the cause of action.  <u>State of California v. Superior Court (Bodde)</u>, 32 Cal. 4th 1234, 1243-44 (2004). Failure to allege compliance or an excuse for noncompliance constitutes a failure to state a cause of action and results in a dismissal of such claims.  <u>Id.</u>

In their Complaint, Plaintiffs allege that they "timely complied" with the GCA.  Complaint, ¶ 14.  This conclusory allegation is belied, however, by the actual claim form attached to Plaintiffs' Complaint.[5]  According to that document, Plaintiffs submitted their claim to the Board of Supervisors of Amador County, not to the governing body of ACUSD or ACOE, the actual Defendants in this action.  Given this failure, Defendants thus correctly argue Plaintiffs' state law claims must be dismissed.  <u>See</u> <u>Johnson v. San Diego Unified School District</u>, 217 Cal. App. 3d 692, 697-700 (1990); <u>Jackson v. Board of Ed. Of City of Los Angeles</u>, 250 Cal. App. 2d 856 (1967).

Plaintiffs nonetheless contend that they substantially complied with the GCA by filing their Claim with the Board of Supervisors and by filing their Law Enforcement Complaint.

///

---

[5] "[I]f a complaint is accompanied by attached documents, the court is not limited by the allegations contained in the Complaint.  These documents are part of the complaint and may be considered in determining whether the plaintiff can prove any set of facts in support of the claim.  Moreover, when the allegations of the complaint are refuted by an attached document, the Court need not accept the allegations as being true." <u>Roth v. Garcia Marquez</u>, 942 F.2d 617, 625 n.1 (9th Cir. 1991) (internal citations and quotations omitted).

Plaintiffs further argue that the issues raised by Defendants' Motion are not amenable to resolution on the pleadings and must be resolved, at the earliest, on summary judgment. Plaintiffs' contentions are rejected.

First, it is clear that the substantial compliance doctrine does not apply when a claim is served on an incorrect entity, Johnson, 217 Cal. App. 3d at 697, and Plaintiffs have provided no persuasive arguments to convince the Court otherwise. Indeed, Plaintiffs' authorities stand for the unremarkable "proposition that there will be substantial compliance with the claims statute when the claim either is actually received by the proper board or should be received because it was served on a subordinate of the proper board." Id. at 698 (internal citations and quotations omitted). No facts are alleged, however, to indicate either such situation exists here. In addition, Plaintiffs' authority all turns on the viability of the decision rendered in Jamison v. State of California, 31 Cal. App. 3d 513 (1973), a decision since rejected by numerous courts as contrary to the requirements of the Government Code. See Attebery v. Placer County, 2009 WL 700425 (E.D. Cal.); Santos v. Merritt College, 2008 WL 4570708, *4 (N.D. Cal.); Del Real v. City of Riverside, 95 Cal. App. 4th 761, 770 (2002); Life v. County of Los Angeles, 227 Cal. App. 3d 894, 900-01 (1991). Accordingly, Plaintiffs' argument that the claim submitted to the County Board of Supervisors suffices as a claim presented to Defendants under the GCA fails.

///

///

///

13

Plaintiffs' additional contention that their Law Enforcement Complaint substantially complied with the GCA requirements and that Defendants waived any objections they may have had to that notice when Defendants failed to notify Plaintiffs of any deficiencies therein is similarly flawed.  See Opposition, 9:15-10:12 (citing Phillips v. Desert Hospital District, 49 Cal. 3d 699, 711-12 (1989)).  First and foremost, the Law Enforcement Complaint was purportedly filed only one day prior to the initiation of the instant litigation, and it is thus unclear how that document would have served the purposes underlying the claims presentation requirements of the GCA.  Moreover, GCA claims are required to be filed and either "acted upon...or.... deemed to have been rejected" by the public entity before a suit is permitted to proceed.  Cal. Gov. Code § 945.4.  Plaintiffs allege no facts, however, indicating Defendants either acted upon the Law Enforcement Complaint or that it was deemed rejected by Defendants at any time.  In addition, nothing in the current Complaint before this Court indicates that the Law Enforcement Complaint was served on the proper parties as required by California Government Code § 915.  Accordingly, Plaintiffs' attempt to recast their Law Enforcement Complaint as a claim under the GCA fails.

Finally, Plaintiffs' argument that the issue of whether a proper claim has been submitted cannot be resolved on motion to dismiss is rejected as well.  Such would be the case only if any facts were initially pled indicating compliance with the GCA may have been had.

///

Such facts are absent here, and dismissal is thus proper. Accordingly, Plaintiffs' first seven causes of action are now DISMISSED with leave to amend.

**B.   Defendants' Motion to Dismiss Plaintiffs' Punitive Damages Allegations.**

Defendants move to dismiss Plaintiffs' request for punitive damages on the bases first that the entity Defendants are immune from such liability pursuant to California Government Code § 818 and second that insufficient facts have been alleged against Defendant Hawk to show she acted with the requisite "oppression, fraud, or malice." Brousseau v. Jarrett, 73 Cal. App. 3d 864, 872 (1977). Plaintiffs concede they cannot recover punitive damages from the entity Defendants. Accordingly, the entity Defendants' motion to dismiss those allegations is GRANTED without leave to amend.

Plaintiffs dispute, however, Defendants' characterization of the Complaint as to Hawk and argue that the facts as alleged against her support the imposition of punitive damages. The Court agrees with Plaintiffs. Plaintiffs essentially allege that they consistently complained regarding Defendants' purportedly unlawful actions and that Plaintiffs were rewarded with a transfer to the worst classroom in the District, a classroom that is alleged to have been basically uninhabitable, causing illness and injury to both teachers and students.

///
///
///

When taken as true, Plaintiffs' allegations indicate that not only the Plaintiffs, but their vulnerable charges as well, were made to function under inhumane conditions, conducive neither to working or learning, all in retaliation for Plaintiffs' attempt to protect their rights as well as the rights of their special needs students.  Accordingly, for purposes of the instant Motion, the Court finds Plaintiffs have alleged sufficient facts to support their request for punitive damages against Hawk. Defendant Hawk's Motion to Dismiss this claim is DENIED.

**C.   Defendants' Motion to Strike.**

Finally, Defendants move to strike the various formulations of the same sentence that Plaintiffs have included within their Complaint an estimated forty-seven (47) times.  Namely, Plaintiffs repeat that: "Defendants' conduct constituted, among other things, illegal harassment, coercion, and retaliation." This averment is a legal conclusion that adds nothing of substance to the Complaint, and there is certainly no need for it to be repeated to the extent it was here.  Accordingly, Defendants' Motion to Strike this sentence, or any formulation thereof, from paragraphs 21-22, 24, 26-34, 37-38, 40, 42-50, 53, 56-57, 60-62, 64-65, 67-69, 71-72, 75-76, 78, 83, 85-87 and 89-91 of the Complaint is hereby GRANTED.

///
///
///
///

**CONCLUSION**

For the reasons stated above, Defendants' Motion to Dismiss (ECF No. 10) is GRANTED with leave to amend as to Plaintiffs' first through seventh causes of action, GRANTED without leave to amend as to Plaintiffs' punitive damages allegations against the entity Defendants and DENIED as to Plaintiffs' punitive damages allegations against individual Defendant Hawk.  Defendants' Motion to Strike (ECF No. 11) is also GRANTED.  Not later than twenty (20) days following the date this Memorandum and Order is electronically filed, Plaintiffs may (but are not required to) file an amended complaint.  If no amended complaint is filed within said twenty (20)-day period, without further notice to the parties, the causes of action dismissed by virtue of this Memorandum and Order will be dismissed with prejudice.

IT IS SO ORDERED.

Dated: July 6, 2012

_____
MORRISON C. ENGLAND, JR.
UNITED STATES DISTRICT JUDGE