UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIE ELLIOTT, et al., | No. 2:12-cv-00117-MCE-DAD |
| Plaintiffs, | |
| v. | **MEMORANDUM AND ORDER** |
| AMADOR COUNTY UNIFIED SCHOOL DISTRICT, et al., | |
| Defendants. | |

Through this action Plaintiffs Marie Elliott ("Elliott"), Andrea Kruse ("Kruse"), Patricia Roots ("Roots") and Randi Wilson ("Wilson") (collectively, "Plaintiffs") seek redress from Defendants Amador County Unified School District ("ACUSD" or the "District"), Amador County Office of Education ("ACOE") and Theresa Hawk ("Hawk") (collectively, "Defendants") for violations of state and federal law. Plaintiffs generally allege that Defendants coerced them to violate the law and to refrain from exercising their statutory rights and duties regarding the needs of their students. Plaintiffs also contend that when they refused to succumb to Defendants' demands, they were repeatedly subjected to various forms of retaliation.

///

///

Presently before the Court is Defendants' Motion to Dismiss all state law claims of Plaintiffs' First Amended Complaint ("FAC") for failure to state a claim upon which relief can be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6).[1] Defendants also request that the Court take judicial notice of certain documents.

## BACKGROUND[2]

At the time of the events alleged in the FAC, Plaintiff Elliott was a special education teacher employed within the District. Elliott served as a program instructor in a structured day class for special needs students who are autistic or display autistic-like behaviors. The remaining Plaintiffs were employed within the District as Elliott's teacher's aides. Plaintiffs all had excellent working relationships, and thus contend that Defendants knew any retaliation against one Plaintiff would be perceived by all Plaintiffs to be directed at each of them individually.

Defendant Hawk served the entity Defendants as the Executive Director of Special Education and thus was Elliott's supervisor. According to Plaintiffs, at all relevant times Hawk was acting under color of law and her conduct was undertaken in the performance of her official duties for the entity Defendants.

While it is unnecessary for purposes of the instant motion to repeat all of the facts set forth in the FAC, a few particularly important retaliation-related allegations follow.

First, Plaintiffs contend that Defendant Hawk asked Elliott to attend a "strategy meeting" at which Hawk advised Elliott that the District was terminating services with a provider whose services were mandated by various student Individualized Education Programs ("IEPs"). I

///

---

[1] All further references to "Rule" or "Rules" are to the Federal Rules of Civil Procedure, unless otherwise noted.

[2] The following factual allegations are taken from Plaintiffs' First Amended Complaint unless otherwise stated.

2

EPs are education plans mandated by state and federal law, as well as by District policies and procedures, to meet the unique educational needs of special needs students. These plans cannot be unilaterally created or modified. Rather, they must be created and modified pursuant to IEP procedures. Hawk informed Elliott that although the District was making its provider change outside of the IEP procedural process, Elliott was to support the District's decision, regardless of whether Elliott actually believed the change to be in any particular student's best interests.

In addition, Elliott was later advised that she would be labeled "insubordinate" if she failed to support the District's IEP offer to a particular student. A District psychologist also demanded that Elliott complete IEP forms in advance of meetings rather than during meetings, as the law and district policies and procedures required. The same psychologist advised Elliott that she needed "to get on board with Hawk."

As a consequence of this behavior, Elliott filed a complaint with the ACOE against the psychologist and Hawk. Plaintiffs believe all Defendants were aware of this complaint. Despite being named in the charge brought by Elliott, Hawk was assigned to conduct the relevant investigation.

Subsequently, Defendants began to exclude Elliott from participating in the assessment of preschoolers for placement in her class. Defendants also discouraged third-party assessors from placing students with Elliott. Defendants then started refusing to provide Elliott with the substitute teachers she needed to be able to attend meetings or training sessions. Defendants also refused to provide substitutes for Elliott's aides, leaving Elliott's classroom understaffed.

Eventually, Hawk informed Elliott that she and a number of her students were being transferred from the Jackson Structured Autistic Program to the Severely Handicapped Special Day Class in Plymouth, California. This transfer was from one side of the county to the other, and increased Elliott's commute by twenty-five minutes each way. More importantly, Hawk purportedly ordered Elliott to falsely inform parents that the move did not constitute a change to student IEPs.

When Elliott's class was subsequently moved to the Plymouth location, she was given inadequate time to prepare, which resulted in a number of classroom items being left behind. Moreover, the classroom to which Elliott was reassigned was known to be the worst room in the District. It had not been used for instruction in over six years, and prior occupants had become sick after spending too much time in the space. The space itself was oddly shaped, dark and cramped, making it difficult for staff to see and monitor students from most vantage points in the room. The toilets were duct taped together and unfit for use, and the room was connected via a ventilation system to containers the District used to store volatile materials. The room had a sickening odor, and Plaintiffs soon discovered through a hole in the ceiling that it was inhabited by rodents and filled with rodent feces. The room also had water and mold damage.

Consequently, Elliott filed a complaint with the California Office of Civil Rights, and Plaintiffs Kruse and Wilson spoke at a school board meeting against Defendants' transfer of Elliott's students to Plymouth. Thereafter, the District refused to provide basic sanitary supplies, such as sanitizing spray, covered garbage cans, or a broom and dustpan, for Elliott's classroom. One of the toilets remained broken, and all highchairs were removed from the room. Plaintiffs and a number of students suffered injuries and illness as a result of the conditions at Plymouth.

Although Plaintiffs continued to complain about the conditions at Plymouth, Defendants failed to rectify the situation. Instead, Defendants continued to retaliate against Plaintiffs by, for example, requiring Elliot to pre-authorize her opinions with the ACUSD prior to meeting with any parents, denying Kruse's son, a student in the district, proper placement and assistance, informing Wilson she would no longer be able to ride the student van to and from work, and, ultimately, transferring Elliott's aides out of her class. Defendants then provided Elliott with two new aides who were not allowed to attend students' toileting needs. Defendants further demanded that Elliott work through breaks because students could not be left alone with the new aides.

///

4

The unhealthy conditions in Elliott's classroom eventually forced her to take a medical leave of absence. Ultimately, Elliott announced her retirement, which would become effective at the end of the next academic year. Within approximately one week of her announcement, Kruse, Roots and Wilson were transferred back to Elliott's class. At that time, the class was being relocated to a new, larger classroom and was being taught by a newly-hired teacher.[3]

As a result of the above conduct, and a litany of other allegations, Plaintiffs served a claim on the Amador County Board of Supervisors pursuant to the California Government Claims Act ("GCA"), Sections 810 et seq. of the California Government Code. In addition, the day before initiating the present case, Plaintiffs served on their supervisor, a school administrator, or the public school employer, a Complaint to Law Enforcement ("Law Enforcement Complaint") pursuant to Section 44114 of the California Education Code, alleging actual or attempted acts of reprisal, retaliation, threats, coercion, or similar improper acts prohibited by section 44113. Plaintiffs subsequently filed their initial Complaint, alleging violations of state and federal law. That Complaint was dismissed with leave to amend on July 6, 2012, for failure to state a claim upon which relief could be granted. (ECF No. 17.)

Plaintiffs filed their FAC on July 16, 2012, alleging the following causes of action: (1) breach of contract (First and Second Causes of Action); (2) violation of Section 44113 of the Education Code (Third Cause of Action); (3) violation of Section 44114 of the Education Code (Fourth Cause of Action); (4) violation of Sections 210, 220, 221.1, 262.3, and 262.4 of the Education Code (Fifth Cause of Action); (5) violation of Section 1102.5 of the Labor Code (Sixth Cause of Action); (6) violation of Sections 6400 et seq. of the Labor Code (Seventh Cause of Action); (7) retaliation in violation of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, et seq. (Eighth Cause of Action); and (8) violation of the First Amendment, 42 U.S.C. § 1983 (Ninth Cause of Action). (ECF No. 18.)

---

[3] It is unclear from the FAC, but it appears that Elliott was still on medical leave at this time.

On August 2, 2012, Defendants moved to dismiss Plaintiffs' state law causes of action because, among other things, Plaintiffs allegedly failed to file a proper claim with Defendants as required by the GCA. Defendants also request that the Court take judicial notice of certain documents. For the reasons set forth below, Defendants' Motion to Dismiss Plaintiffs' state law claims is GRANTED, and Defendants' Request for Judicial Notice is GRANTED.

## STANDARD

On a motion to dismiss for failure to state a claim under Rule 12(b)(6), all allegations of material fact must be accepted as true and construed in the light most on-moving to the on-moving party. Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996). Rule 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant a fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (1997) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). A complaint attacked by a Rule 12(b)(6) motion to dismiss does not require detailed factual allegations. Id. However, "a plaintiff's obligations to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. (internal citations and quotations omitted). A court is not required to accept as true a "legal conclusion couched as a factual allegation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555 (citing 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1216 (3d ed. 2004) (stating that the pleading must contain something more than a "statement of facts that merely creates a suspicion [of] a legally cognizable right of action.")).

///

6

Furthermore, "Rule 8(a)(2) . . . requires a 'showing,' rather than a blanket assertion, of entitlement to relief." Twombly, 550 U.S. at 556 n.3 (internal citations and quotations omitted). "Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirements of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." Id. (citing 5 Charles Alan Wright & Arthur R. Miller, supra, at § 1202). A pleading must contain "only enough facts to state a claim to relief that is plausible on its face." Id. at 570. If the "plaintiffs . . . have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." Id. However, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" Id. at 556 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

A court granting a motion to dismiss a complaint must then decide whether to grant leave to amend. Leave to amend should be "freely given" where there is no "undue delay, bad faith or dilatory motive on the part of the movant, . . . undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment . . . ." Foman v. Davis, 371 U.S. 178, 182 (1962); Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003) (listing the Foman factors as those to be considered when deciding whether to grant leave to amend). Not all of these factors merit equal weight. Rather, "the consideration of prejudice to the opposing party . . . carries the greatest weight." Id. (citing DCD Programs, Ltd. v. Leighton, 833 F.2d 183, 185 (9th Cir. 1987)). Dismissal without leave to amend is proper only if it is clear that "the complaint could not be saved by any amendment." Intri-Plex Techs. v. Crest Group, Inc., 499 F.3d 1048, 1056 (9th Cir. 2007) (citing In re Daou Sys., Inc., 411 F.3d 1006, 1013 (9th Cir. 2005)); Ascon Props., Inc. v. Mobil Oil Co., 866 F.2d 1149, 1160 (9th Cir. 1989) ("Leave need not be granted where the amendment of the complaint . . . constitutes an exercise in futility . . . .")).

///

**ANALYSIS**

Plaintiffs allege violations of state and federal law and request relief accordingly. Defendants move to dismiss Plaintiffs' First through Seventh Causes of Action, namely their state law claims, for failure to comply with California's GCA.  (ECF No. 19.) Defendants also move to dismiss Plaintiffs' claim for punitive damages against the entity Defendants.  The issue before the Court is not the substance of these various claims, but whether Plaintiffs have pled sufficient facts as a general matter.  While the complaint does not need detailed factual allegations, it must still provide sufficient facts alleged under a cognizable theory.

**A.     The GCA**

Before bringing suit against a public entity, the GCA requires "the timely presentation of a written claim and the rejection of the claim in whole or in part." Mangold v. Cal. Pub. Utils. Comm'n, 67 F.3d 1470, 1477 (9th Cir. 1995).  Claims must also be presented prior to bringing suit against a public employee who allegedly caused injury while acting within the scope of his or her employment. Briggs v. Lawrence, 230 Cal. App. 3d 605, 612-13 (1991).  "[T]he claims-presentation requirements serve two basic purposes:  First, they give the governmental entity an opportunity to settle just claims before suit is brought.  Second, they permit the entity to make an early investigation of the facts on which a claim is based, thus enabling it to defend itself against unjust claims and to correct the conditions or practices which gave rise to the claim." Lozada v. City of S.F., 145 Cal. App. 4th 1139, 1151 (2006) (internal citations and quotations omitted).  A plaintiff must allege facts demonstrating either compliance with the GCA requirements or an excuse for non–compliance as an essential element of the cause of action.

///

California. v. Sup. Ct., (Bodde), 32 Cal. 4th 1234, 1243 (2004).  Failure to allege compliance or an excuse for noncompliance constitutes a failure to state a cause of action and must result in dismissal of such claims.  Id.

Plaintiffs' FAC alleges that Plaintiffs "timely complied" with the GCA.  (ECF No. 18 at 7.)  Plaintiffs also argue that to the extent that they failed to timely comply with the GCA, they have substantially complied with the GCA in numerous ways.  (Id. at 7-11.) Additionally, Plaintiffs allege that Defendants had actual notice of Plaintiffs' claims, "thus enabling Defendants to defend . . . against unjust claims and to correct the conditions or practices which gave rise to the claim . . . ."  (Id. at 11.)  Plaintiffs next claim that Defendants have "waived any objections to the extent that Plaintiffs' compliance with the [GCA] was deficient by failing to notify Plaintiffs of the deficiency . . . ."  (Id. at 11-12.) Finally, Plaintiffs argue that the GCA does not apply to claims made pursuant to Sections 44113 and 44114 of the Education Code.  (ECF No. 22 at 8.)  The Court will address each of Plaintiffs' arguments in turn.

### 1.     Timely Compliance with the GCA

"The GCA requires that a party seeking to recover money damages from a public entity or its employees must submit a claim to the entity before filing suit in court . . . ." Harvey v. City of S. Lake Tahoe, No. CIV S-10-1653, 2011 WL 3501687, *5 (E.D. Cal. Aug. 9, 2011) (emphasis added) (citing Cal. Gov't Code §§ 905, 911.2, 945, 950.2). Plaintiffs allege that they "timely complied" with the GCA by submitting a claim to the Board of Supervisors of Amador County on April 7, 2011.  (ECF No. 18 at 7.)  However, Plaintiffs' conclusory allegation of compliance with the GCA is belied by the actual claim form attached to Plaintiffs' FAC.  (ECF No. 18-1.)

///

///

///

> [I]f a complaint is accompanied by attached documents, the [C]ourt is not limited by the allegations contained in the complaint. These documents are part of the complaint and may be considered in determining whether the plaintiff can prove any set of facts in support of the claim. Moreover, when the allegations of the complaint are refuted by an attached document, the Court need not accept the allegations as being true.

Roth v. Garcia Marquez, 942 F.2d 617, 625 n.1 (9th Cir. 1991) (internal citations and quotations omitted). According to the document attached to Plaintiffs' FAC, Plaintiffs submitted their claim not to the governing body of ACUSD or ACOE, the actual Defendants in this action, but to the Board of Supervisors of Amador County. (ECF No. 18-1.) Given Plaintiffs' failure to present their tort claim to the public entities that are the named defendants in this case, Plaintiffs did not timely comply with the GCA.

### 2.    Substantial Compliance with the GCA

Plaintiffs nonetheless contend that they substantially complied with the GCA by filing their Claim with the Board of Supervisors of Amador County and by filing their Law Enforcement Complaint. Because the GCA is "designed to protect governmental agencies from stale and fraudulent claims, provide an opportunity for timely investigation, and encourage settling meritorious claims," the statute should "not be used as [a] trap[] for the unwary when [its] underling purposes have been satisfied." Johnson v. San Diego Unified Sch. Dist., 217 Cal. App. 3d 692, 697 (1990) (citing Jamison v. California, 31 Cal. App. 3d 513, 518 (1973)). "Consequently, the courts employ a test of substantial compliance, rather than strict compliance, in determining whether the plaintiff has met the filing requirements of the [GCA]." Id. (citing City of San Jose v. Sup. Ct., 12 Cal. 3d. 447, 456-57 (1974)). The doctrine of substantial compliance applies "where there has been an attempt to comply [with the GCA] but the compliance is defective . . . ." Id.

///

///

1  Courts must therefore "ask whether sufficient information is disclosed on the face of the
2  filed claims 'to reasonable enable the public entity to make an adequate investigation of
3  the merits of the claim and to settle it without the expense of a lawsuit.'" Id.  However,
4  "[t]he doctrine of substantial compliance is not applicable to a claim which is addressed
5  to the wrong entity." Id.  If a plaintiff presents a tort claim to the wrong public entity, the
6  claim must be "actually received" by the appropriate "clerk, secretary, auditor, or board of
7  the local public entity" within the prescribed time period.  Cal. Gov't Code § 915(e)(1).

   Plaintiffs allege that "upon information and belief, on or about April 7, 2011, [the claim filed with the Board of Supervisors of Amador County] was referred to [ACUSD] and [ACOE], thereby giving [Defendants] notice of it." (ECF No. 18 at 7).  In response, Defendants request that the Court take judicial notice of a declaration from the custodian of records for ACUSD and ACOE.  (ECF No. 19-2.)  The declaration states that neither entity ever received a Government Tort Claim on behalf of Plaintiffs.  (Id.)

   On a motion to dismiss, a court may consider matters of judicial notice without converting the motion into a motion for summary judgment.  United States v. Ritchie, 342 F.3d 903, 908 (9th Cir. 2003).  Whether or not a Tort Claim has been presented to a public entity is subject to judicial notice.  See Evans v. CSP Sacramento, No. CIV S-10-1969, 2011 WL 4738472, *4 (E.D. Cal. Oct. 5, 2011) (taking judicial notice of a declaration from the custodian of records that plaintiff had not filed a claim) (citing Smith v. Duncan, 297 F.3d 809, 815 (9th Cir. 2002), overruled on other grounds by Pace v. DiGuglielmo, 544 U.S. 408 (2005)); see also Clarke v. Upton, 703 F. Supp. 2d 1037, 1042 (E.D. Cal. 2010) (taking judicial notice of the filing date and content of the Tort Claims and their rejection by the County, on the grounds that the "documents are matters of public record and sets forth facts 'capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned'");

///
///
///

11

Alls v. Friedman, No. C 05-0901, 2007 WL 806515, *4 (N.D. Cal. Mar. 15, 2007) (taking judicial notice of a copy of plaintiff's tort claim that was rejected as untimely, and a certification by the custodian of records that the other two documents are true and correct copies).

The Court finds that the declaration of the custodian of records for ACUSD and ACOE attests to a "matter of public record and sets forth facts 'capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned.'" Clarke, 703 F. Supp. 2d at 1042 (citing Fed. R. Evid. 201). Accordingly, the Court hereby takes judicial notice of the declaration of the custodian of records for the entity Defendants. (ECF No. 19-2.)

"The court need not . . . accept as true the allegations that contradict matters properly subject to judicial notice or by exhibit. Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001), opinion amended by 275 F.3d 1187 (2001) (citing Mullis v. United States Bankr. Ct., 828 F.2d 1385 (9th Cir. 1987); Clegg v. Cult Awareness Network, 18 F.3d 752, 754-55 (9th Cir. 1994)). Thus, the Court need not accept Plaintiffs' allegation that their Tort Claim was referred to the entity Defendants. This allegation is conclusory, and the declaration of the custodian of records establishes otherwise. Accordingly, the Tort Claim submitted by Plaintiffs to the Board of Supervisors of Amador County does not substantially comply with the GCA.

Plaintiffs additionally contend that their Law Enforcement Complaint substantially complied with the GCA requirements. This argument is flawed. First and foremost, the Law Enforcement Complaint was purportedly filed only one day prior to the initiation of the instant litigation, and thus it is unclear how that document would have served the dual purposes underlying the GCA. See supra. Moreover, GCA claims are required to be filed and either "acted upon . . . or . . . deemed to have been rejected" by the public entity before a suit is permitted to proceed." Cal. Gov't Code § 945.4.

Plaintiffs have alleged no facts, however, indicating that Defendants either acted upon the Law Enforcement Complaint or that it was it was deemed rejected by Defendants at any time.  In addition, nothing in the Complaint presently before the Court indicates that the Law Enforcement Complaint was served on the proper parties as required by Section 915 of the California Government Code.  Plaintiffs' Law Enforcement Complaint thus does not constitute substantial compliance with the GCA.

Plaintiffs also allege that they substantially complied with the GCA by: (1) filing a complaint with the ACOE against Hawk and the District's psychologist around March 10, 2010, complaining that Hawk and the psychologist were coercing Elliott to violate the IEP procedures and policies; (2) filing a formal complaint with the California Office of Civil Rights on June 11, 2010, complaining about retaliation and intimidation; (3) delivering a letter to the District superintendent on September 10, 2010, complaining about the unhealthy conditions in the Plymouth classroom; (4) sending a letter to the District superintendent and Board, among others, on October 6, 2010, complaining that Defendants had failed to resolve the health and safety concerns raised by Plaintiffs. (ECF No. 18 at 8-11.)  It is unclear whether Plaintiffs believe that these additional documents collectively constitute substantial compliance with the GCA, or that each document on its own constitutes substantial compliance.

California courts are split as to whether a series of documents can constitute a "claim as presented."  A "claim as presented' is a document that "discloses the existence of a 'claim,' which, if not satisfactorily resolved, will result in a lawsuit against the entity." Phillips v. Desert Hosp. Dist., 49 Cal. 3d 699, 709 (1989) (citing Tyus v. City of L.A., 74 Cal. App. 3d. 667, 672 (1977).  In Dilts v. Cantua Elementary Sch. Dist., the Fifth District Court of Appeal held that the procedure for filing Tort Claims would become "totally unworkable" if a series of letters could collectively constitute a claim. 189 Cal. App. 3d 27, 35-36 (1987).  Likewise, in Schaefer Dixon Assoc. v. Santa Ana Watershed Proj. Auth., the Fourth District held that there was no claim as presented when none of the letters in the series advised that litigation was imminent.

48 Cal. App. 4th 524, 536 (1996) ("The practical considerations discussed in Dilts are also operative here . . . . It is entirely unworkable to expect the public entity to discern that [one] letter, unlike the others, was to be treated as a 'claim . . . .'"). The Fourth District, like the Fifth District, expressed concerns about the workability of allowing a series of letters, or even one letter in a series, to constitute a claim. Id. However, in Alliance Fin. v. City of S.F., the First District found that a series of letters, one of which made clear references to filing suit and potential damages, constituted a claim as presented under the GCA. 64 Cal. App. 4th 635, 647-48 (1998).

Under either view, Plaintiffs' contention is without merit. Plaintiffs do not allege facts sufficient to establish that any of the documents they filed, either collectively or individually, made clear to Defendants that litigation was imminent or even considered. In Alliance, which held that as series of letters could constitute a "claim as presented," the First District found it significant that one letter in particular "state[d] the existence of a debt, assert[ed] a right to payment, [spoke] of avoiding litigation, point[ed] out that a failure to pay [would] result in interest and 'possible future court costs,' and ask[ed] for information so that litigation might be avoided." 64 Cal. App. 4th at 646. Plaintiffs make no such allegations as to their own set of letters. They offer nothing to show that these letters, either collectively or individually, disclosed to Defendants "the existence of a 'claim,' which, if not satisfactorily resolved, [would] result in a lawsuit against the entity." Phillips, 49 Cal. 3d at 709. Indeed, Plaintiffs fail to meet the basic requirement of showing that any one of these documents "accomplished the two principal purposes of a sufficient claim," namely affording Defendants "the opportunity to make a prompt investigation . . . and [giving Defendants] the opportunity to settle without suit . . . ." Id. at 710 (citing Foster v. McFadden, 30 Cal. App. 3d 943, 949 (1973)). Accordingly, the documents, both as a series and individually, do not constitute substantial compliance with the GCA.

///

///

### 3.     Actual Notice

Alternatively, Plaintiffs argue that Defendants had actual notice of the facts supporting Plaintiffs' claim, and thus Plaintiffs' failure to comply with the GCA is excused. (ECF No. 18 at 11.)  However, the California Supreme Court has stated that "[i]t is well-settled that claims statutes must be satisfied even in the face of the public entity's actual knowledge of the circumstances surrounding the claim.  Such knowledge—standing alone—constitutes neither substantial compliance nor basis for estoppel."  City of San Jose, 12 Cal. 3d at 455; see also Sandoval v. Merced Union High Sch., No. CV-F-06-066, 2006 WL 1171828, *12 (E.D. Cal. May 3, 2006) (quoting City of San Jose, 12 Cal. 3d at 455).  Indeed, "it is not the purpose of [the GCA] to prevent surprise.  Rather, the purpose of these statutes is to provide the public entity sufficient information to enable it to adequately investigate claims and settle then, if appropriate, without the expense of litigation."  Sandoval, 2006 WL 1171828, *12 (quoting City of San Jose, 12 Cal. 3d at 455).  Accordingly, Defendants' actual notice of the facts supporting Plaintiffs' claims is immaterial to whether Plaintiffs' have substantially complied with the GCA.  Plaintiffs' argument therefore fails.

### 4.     Waiver

Plaintiffs also argue that because Defendants failed to notify them of the deficiency of their claim under the GCA, Defendants waived any objections thereto.  The GCA does allow for waiver in some circumstances.  Section 911.2 of the California Government Code requires a plaintiff to present a Tort Claim to the public entity within a specified time after accrual of the cause of action.  Cal. Gov't Code § 911.2.

///

///

///

15

1  If the public entity determines that "the claim as presented" does not substantially comply
2  with the requirements for presenting a claim, and is therefore defective, the public entity
3  may either "give written notice of [the claim's] insufficiency, stating with particularity the
4  defects or omissions therein" within twenty days, or waive any defense "as to the
5  sufficiency of the claim based upon a defect or omission in the claim as presented."
6  Phillips, 49 Cal. 3d at 705 (quoting Cal. Gov't Code § 911).  As explained above, a "claim
7  as presented" is one which "discloses the existence of a 'claim,' which, if not
8  satisfactorily resolved, will result in a lawsuit against the entity."  Id. at 709.  Filing a
9  complete and valid "claim" under the GCA does not trigger the notice and defense-
10  waiver provisions; rather, only a "claim as presented" can trigger these provisions.  Id. at
11  707 (citing Cal. Gov't Code § 911).  Thus, the notice and defense-waiver provisions only
12  apply when a plaintiff files a claim that, although defective, nonetheless discloses the
13  existence of a claim and the potential for litigation.  Id.
14      Here, Plaintiffs fail to plead facts sufficient to demonstrate that they filed any
15  claim, complaint, or other document which "disclose[d] [to Defendants] the existence of a
16  'claim,' which, if not satisfactorily resolved, [would] result in a lawsuit . . . ."  Id. at 709.
17  Plaintiffs simply have failed to allege facts sufficient to establish that they filed a "claim
18  as presented," see supra, and the notice and defense-waiver provisions of Section 911
19  of the California Government Code therefore do not apply to Plaintiffs' claim.
20  Accordingly, Plaintiffs' contention that Defendants failed to notify Plaintiffs of the
21  deficiency of their claim, and thus waived their objections to the deficiency of that claim,
22  is without merit.
23  ///
24  ///
25  ///
26  ///
27  ///
28  ///

### 5. Claims Pursuant to Sections 44113 and 44114 of the Education Code

Finally, Plaintiffs argue that the GCA does not apply to claims made pursuant to Sections 44113 and 44114 of the California Education Code because those code provisions fall under a different statutory structure with a separate exhaustion requirement. Plaintiffs contend that this separate exhaustion requirement is contained in section 44114, which states "an action for damages shall not be available to the injured party unless the injured party has first filed a complaint with the local law enforcement agency." Cal. Educ. Code. § 44114(c). Plaintiffs cite to no authority to support their proposition, but instead compare the Education Code to the California Fair Employment and Housing Act ("FEHA"), Cal. Gov't Code § 12900 et seq. (ECF No. 22 at 9.)

Plaintiffs' comparison is unavailing for two reasons. First, the FEHA claims process includes filing a verified complaint, investigating a complaint, issuing a written accusation, and hearings held by the Fair Employment and Housing Commission. See Cal. Gov't Code §§ 12960 (verified complaint), 12963 (investigation), 12965 (written accusation), 12967 (hearings); see also Garcia v. L.A. Unified Sch. Dist., 173 Cal App. 3d 701, 710 (1985) ("The above provisions demonstrate a legislative intention to exempt actions under the FEHA from the general Tort Claims Act requirements."). Section 44114 sets forth no such exhaustion requirements. Cal. Educ. Code § 44114. Second, the GCA applies to "all claims for money or damages against local public entities" unless a claim is specifically exempted. Cal. Gov't Code § 905. Claims made pursuant to sections 44113 and 44114 are not listed as exemptions, and are therefore subject to the GCA. Id. Plaintiffs' argument that their claims made pursuant to sections 44113 and 44114 is therefore without merit.

///

///

///

In sum, Plaintiffs have failed to allege facts sufficient to establish their "compliance or an excuse for noncompliance" with the GCA. Bodde, 32 Cal. 4th at 1243. Plaintiffs' failure to do so "constitutes a failure to state a cause of action and results in dismissal of such claims." Id. Defendants' motion to dismiss Plaintiffs' state law claims is therefore GRANTED with leave to amend.

### B.    Punitive Damages

Defendants also move to dismiss Plaintiffs' punitive damages claim against the entity Defendants on the grounds that the entity Defendants are immune from such liability pursuant to Section 818 of the California Government Code. In its order dated July 6, 2012, the Court observed that Plaintiffs conceded they could not recover punitive damages from the entity defendants, and granted Defendants' motion to dismiss the claim for punitive damages against the entity Defendants without leave to amend. (ECF No. 17 at 15.) The Court reaffirms the ruling of its July 6, 2012, order.

## CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint (ECF No. 19) is GRANTED with leave to amend. Not later than twenty (20) days following the date of this Memorandum and Order is electronically filed, Plaintiffs may file an amended complaint. If no amended complaint is filed within said twenty- (20) day period, without further notice to the parties, the causes of action dismissed by virtue of the Memorandum and Order will be dismissed with prejudice.

IT IS SO ORDERED.

Dated:  October 16, 2012

_____
MORRISON C. ENGLAND, JR
UNITED STATES DISTRICT JUDGE