1
2
3
4
5
6
7
8                   UNITED STATES DISTRICT COURT
9                  EASTERN DISTRICT OF CALIFORNIA
10
11   MARIE ELLIOTT, et al.,                Case No.  2:12-cv-00117-MCE-DAD
12              Plaintiffs,
13        v.                               **MEMORANDUM AND ORDER**
14   AMADOR COUNTY UNIFIED
     SCHOOL DISTRICT, et al.,
15
16              Defendants.
17
18        Through this action Plaintiffs Marie Elliott ("Elliott"), Andrea Kruse ("Kruse"),

19   Patricia Roots ("Roots") and Randi Wilson ("Wilson") (collectively "Plaintiffs") seek

20   redress from Defendants Amador County Unified School District ("ACUSD" or "the

21   District"), Amador County Office of Education ("ACOE") and Theresa Hawk ("Hawk")

22   (collectively "Defendants") for violations of state and federal law.  Plaintiffs generally

23   allege that Defendants coerced them to violate the law and to refrain from exercising

24   their statutory rights and duties regarding the needs of their students.  Plaintiffs also

25   contend that when they refused to succumb to Defendants' demands, they were

26   repeatedly subjected to various forms of retaliation.

27   ///

28   ///

                                    1

1   Specifically, Plaintiffs' Second Amended Complaint alleges the following causes of

2   action: (1) breach of contract; (2) violation of Section 44113 of the Education Code;

3   (3) violation of Section 44114 of the Education Code; (4) violation of Sections 210, 220,

4   221.1, 262.3, and 262.4 of the Education Code; (5) violation of Section 1102.5 of the

5   Labor Code; (6) violation of Sections 6400 et seq. of the Labor Code; (7) retaliation in

6   violation of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, et seq.; and

7   (8) violation of the First Amendment, 42 U.S.C. § 1983.  (ECF No. 26.)

8        Presently before the Court is Defendants' Motion to Dismiss all state law causes

9   of action of Plaintiffs' Second Amended Complaint for failure to state a claim upon which

10  relief can be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6).[1]  (ECF

11  No. 27.)  Defendants also request that the Court take judicial notice of certain

12  documents.  (ECF No. 27-2.)  For the reasons set forth below, Defendants' Motion to

13  Dismiss Plaintiffs' state law claims is granted, and Defendants' Request for Judicial

14  Notice is granted in part and denied in part.[2]

15

16                                    **BACKGROUND**[3]

17

18        At the time of the events alleged in the Second Amended Complaint, Plaintiff

19  Elliott was a special education teacher employed within the District.  Elliott served as a

20  program instructor in a structured day class for special needs students who are autistic

21  or display autistic-like behaviors.  The remaining Plaintiffs were employed within the

22  District as Elliott's teacher's aides.

23  ///

24  _____

25        [1] All further references to "Rule" or "Rules" are to the Federal Rules of Civil Procedure, unless otherwise noted.

26        [2] Because oral argument was not of material assistance, the Court ordered this matter submitted

27  on the briefing.  E.D. Cal. Local Rule 230(g).

28        [3] The following recitation of facts is taken from Plaintiffs' Second Amended Complaint (ECF No. 26) unless otherwise stated.

1  Plaintiffs all had excellent working relationships, and thus contend that Defendants knew

2  any retaliation against one Plaintiff would be perceived by all Plaintiffs to be directed at

3  each of them individually.

4      Defendant Hawk served the entity Defendants as the Executive Director of

5  Special Education and thus was Elliott's supervisor.  According to Plaintiffs, at all

6  relevant times Hawk was acting under color of law and her conduct was undertaken in

7  the performance of her official duties for the entity Defendants.

8      While it is unnecessary for purposes of the instant motion to repeat all of the facts

9  set forth in the Second Amended Complaint, a few particularly important retaliation-

10  related allegations follow.

11      First, Plaintiffs contend that Defendant Hawk asked Elliott to attend a "strategy

12  meeting" at which Hawk advised Elliott that the District was terminating services with a

13  provider whose services were mandated by various student Individualized Education

14  Programs ("IEPs").

15      IEPs are education plans mandated by state and federal law, as well as by District

16  policies and procedures, to meet the unique educational needs of special needs

17  students.  These plans cannot be unilaterally created or modified.  Rather, they must be

18  created and modified pursuant to IEP procedures.  Hawk informed Elliott that although

19  the District was making its provider change outside of the IEP procedural process, Elliott

20  was to support the District's decision, regardless of whether Elliott actually believed the

21  change to be in any particular student's best interests.

22      In addition, Elliott was later advised that she would be labeled "insubordinate" if

23  she failed to support the District's IEP offer to a particular student.  A District

24  psychologist also demanded that Elliott complete IEP forms in advance of meetings

25  rather than during meetings, as the law and district policies and procedures required.

26  The same psychologist advised Elliott that she needed "to get on board with Hawk."

27      As a consequence of this behavior, Elliott filed a complaint with the ACOE against

28  the psychologist and Hawk.

3

1   Plaintiffs believe all Defendants were aware of this complaint.  Despite being named in

2   the charge brought by Elliott, Hawk was assigned to conduct the relevant investigation.

3          Subsequently, Defendants began to exclude Elliott from participating in the

4   assessment of preschoolers for placement in her class.  Defendants also discouraged

5   third-party assessors from placing students with Elliott.  Defendants then started refusing

6   to provide Elliott with the substitute teachers she needed to be able to attend meetings

7   or training sessions.  Defendants also refused to provide substitutes for Elliott's aides,

8   leaving Elliott's classroom understaffed.

9          Eventually, Hawk informed Elliott that she and a number of her students were

10  being transferred from the Jackson Structured Autistic Program to the Severely

11  Handicapped Special Day Class in Plymouth, California.  This transfer was from one

12  side of the county to the other and increased Elliott's commute by twenty-five minutes

13  each way.  More importantly, Hawk purportedly ordered Elliott to falsely inform parents

14  that the move did not constitute a change to student IEPs.

15         When Elliott's class was subsequently moved to the Plymouth location, she was

16  given inadequate time to prepare, which resulted in a number of classroom items being

17  left behind.  Moreover, the classroom to which Elliott was reassigned was known to be

18  the worst room in the District.  It had not been used for instruction in over six years, and

19  prior occupants had become sick after spending too much time in the space.  The space

20  itself was oddly shaped, dark and cramped, making it difficult for staff to see and monitor

21  students from most vantage points in the room.  The toilets were duct taped together and

22  unfit for use, and the room was connected via a ventilation system to containers the

23  District used to store volatile materials.  The room had a sickening odor, and Plaintiffs

24  soon discovered through a hole in the ceiling that it was inhabited by rodents and filled

25  with rodent feces.  The room also had water and mold damage.

26         Consequently, Elliott filed a complaint with the California Office of Civil Rights,

27  and Plaintiffs Kruse and Wilson spoke at a school board meeting against Defendants'

28  transfer of Elliott's students to Plymouth.

1   Thereafter, the District refused to provide basic sanitary supplies, such as sanitizing

2   spray, covered garbage cans, or a broom and dustpan, for Elliott's classroom.  One of

3   the toilets remained broken, and all highchairs were removed from the room.  Plaintiffs

4   and a number of students suffered injuries and illness as a result of the conditions at

5   Plymouth.

6        Although Plaintiffs continued to complain about the conditions at Plymouth,

7   Defendants failed to rectify the situation.  Instead, Defendants continued to retaliate

8   against Plaintiffs by, for example, requiring Elliott to pre-authorize her opinions with the

9   ACUSD prior to meeting with any parents, denying Kruse's son, a student in the district,

10  proper placement and assistance, informing Wilson she would no longer be able to ride

11  the student van to and from work, and, ultimately, transferring Elliott's aides out of her

12  class.  Defendants then provided Elliott with two new aides who were not allowed to

13  attend students' toileting needs.  Defendants further demanded that Elliott work through

14  breaks because students could not be left alone with the new aides.

15       The unhealthy conditions in Elliott's classroom eventually forced her to take a

16  medical leave of absence.  Ultimately, Elliott announced her retirement, which would

17  become effective at the end of the next academic year.  Within approximately one week

18  of her announcement, Kruse, Roots and Wilson were transferred back to Elliott's class.

19  At that time, the class was being relocated to a new, larger classroom and was being

20  taught by a newly-hired teacher.  It appears that Elliott was still on medical leave at this

21  time.

22       As a result of the above conduct, and a litany of other allegations, Plaintiffs served

23  a claim on the Amador County Board of Supervisors pursuant to the California

24  Government Claims Act ("GCA").

25  ///

26  ///

27  ///

28  ///

1    In addition, the day before initiating the present case, Plaintiffs served on their

2    supervisor, a school administrator, or the public school employer, a Complaint to Law

3    Enforcement ("Law Enforcement Complaint") pursuant to Section 44114 of the California

4    Education Code, alleging actual or attempted acts of reprisal, retaliation, threats,

5    coercion, or similar improper acts prohibited by California Education Code section

6    44113.[4]

7                                        **STANDARD**

8

9          On a motion to dismiss for failure to state a claim under Rule 12(b)(6), all

10   allegations of material fact must be accepted as true and construed in the light most

11   on-moving to the non-moving party.  Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-38

12   (9th Cir. 1996).  Rule 8(a)(2) "requires only 'a short and plain statement of the claim

13   showing that the pleader is entitled to relief,' in order to 'give the defendant a fair notice

14   of what the . . . claim is and the grounds upon which it rests.'"  Bell Atl. Corp. v.

15   Twombly, 550 U.S. 544, 555 (1997) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).

16   A complaint attacked by a Rule 12(b)(6) motion to dismiss does not require detailed

17   factual allegations.  Id.  However, "a plaintiff's obligations to provide the grounds of his

18   entitlement to relief requires more than labels and conclusions, and a formulaic recitation

19   of the elements of a cause of action will not do."  Id. (internal citations and quotations

20   omitted).  A court is not required to accept as true a "legal conclusion couched as a

21   factual allegation."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly,

22   550 U.S. at 555).  "Factual allegations must be enough to raise a right to relief above the

23   speculative level."

24   ///

25   _____

26        [4] The Law Enforcement Complaint is attached as Exhibit A to Plaintiffs' Second Amended
     Complaint.  (ECF No. 26-1.)  "If a complaint is accompanied by attached documents, the court is not
27   limited by the allegations contained in the complaint.  These documents are part of the complaint and may
     be considered in determining whether the plaintiff can prove any set of facts in support of the claim."
28   Roth v. Garcia Marquez, 942 F.2d 617, 625 n.1 (9th Cir. 1991).  Accordingly, the Court may properly
     consider the Law Enforcement Complaint as part of Plaintiffs' Second Amended Complaint.

                                          6

1  Twombly, 550 U.S. at 555 (citing 5 Charles Alan Wright & Arthur R. Miller, Federal

2  Practice and Procedure § 1216 (3d ed. 2004) (stating that the pleading must contain

3  something more than a "statement of facts that merely creates a suspicion [of] a legally

4  cognizable right of action.")).

5          Furthermore, "Rule 8(a)(2) . . . requires a 'showing,' rather than a blanket

6  assertion, of entitlement to relief." Twombly, 550 U.S. at 556 n.3 (internal citations and

7  quotations omitted). "Without some factual allegation in the complaint, it is hard to see

8  how a claimant could satisfy the requirements of providing not only 'fair notice' of the

9  nature of the claim, but also 'grounds' on which the claim rests." Id. (citing 5 Charles

10  Alan Wright & Arthur R. Miller, supra, at § 1202). A pleading must contain "only enough

11  facts to state a claim to relief that is plausible on its face." Id. at 570. If the "plaintiffs . . .

12  have not nudged their claims across the line from conceivable to plausible, their

13  complaint must be dismissed." Id. However, "a well-pleaded complaint may proceed

14  even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a

15  recovery is very remote and unlikely.'" Id. at 556 (quoting Scheuer v. Rhodes, 416 U.S.

16  232, 236 (1974)).

17          A court granting a motion to dismiss a complaint must then decide whether to

18  grant leave to amend. Leave to amend should be "freely given" where there is no

19  "undue delay, bad faith or dilatory motive on the part of the movant, . . . undue prejudice

20  to the opposing party by virtue of allowance of the amendment, [or] futility of the

21  amendment . . . ." Foman v. Davis, 371 U.S. 178, 182 (1962); Eminence Capital, LLC v.

22  Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003) (listing the Foman factors as those to

23  be considered when deciding whether to grant leave to amend). Not all of these factors

24  merit equal weight. Rather, "the consideration of prejudice to the opposing party . . .

25  carries the greatest weight." Id. (citing DCD Programs, Ltd. v. Leighton, 833 F.2d 183,

26  185 (9th Cir. 1987)). Dismissal without leave to amend is proper only if it is clear that

27  "the complaint could not be saved by any amendment."

28  ///

7

1    Intri-Plex Techs. v. Crest Group, Inc., 499 F.3d 1048, 1056 (9th Cir. 2007) (citing In re

2    Daou Sys., Inc., 411 F.3d 1006, 1013 (9th Cir. 2005)); Ascon Props., Inc. v. Mobil Oil

3    Co., 866 F.2d 1149, 1160 (9th Cir. 1989) ("Leave need not be granted where the

4    amendment of the complaint . . . constitutes an exercise in futility . . . .")).

5

6                                        **ANALYSIS**

7        **A.      Material Changes to Plaintiffs' Second Amended Complaint**

8

9            Defendants move to dismiss Plaintiffs' First through Seventh Causes of Action,

10   namely, their state law claims, for failure to comply with California's GCA.  (ECF No. 27.)

11   These claims have been dismissed by the Court in two previous orders.  (ECF Nos. 17,

12   25.)  Footnote 1 of Plaintiffs' Second Amended Complaint states: "This Second

13   Amended Complaint adds a footer to the first page, adds this footnote to the second

14   page, amends paragraph 21 including, without limitation, with an attendant exhibit, and

15   deletes the prayer for relief regarding punitive damages against the public entities.  No

16   further substantive changes were made." (ECF No. 26 at 2.)  As in Plaintiffs' First

17   Amended Complaint, Plaintiffs' Second Amended Complaint alleges that Plaintiffs "timely

18   complied" with the GCA by submitting a claim to the Board of Supervisors of Amador

19   County on April 7, 2011.  (ECF No. 26 at 7.)  Additionally, Plaintiffs allege that

20   Defendants had actual notice of Plaintiffs' claims, "thus enabling Defendants to defend

21   . . . against unjust claims and to correct the conditions or practices which gave rise to the

22   claim . . . ."  (Id. at 11-12.)  Plaintiffs next claim that Defendants have "waived any

23   objections to the extent that Plaintiffs' compliance with the [GCA] was deficient by failing

24   to notify Plaintiffs of the deficiency . . . ."  (Id. at 12.)  In light of Plaintiffs' statement

25   regarding the changes in the Second Amended Complaint, the Court will address

26   Plaintiffs' arguments only to the extent that Plaintiffs' substantive changes to the

27   pleadings require additional analysis from the Court's prior order.

28   ///

1  To the extent that Plaintiffs' new pleadings and arguments are identical to the pleadings

2  and arguments in Plaintiffs' First Amended Complaint, the Court adopts its prior order

3  (ECF No. 25) by reference and incorporates it herein, thereby rejecting these identical

4  arguments.

5          The only material change to Plaintiffs' Complaint is that Plaintiffs now add the

6  allegation that the original Complaint filed in this action was not served on any

7  Defendant until December 19, 2011.  (ECF No. 26 at 8.)  Plaintiffs argue that to the

8  extent that they failed to timely comply with the GCA by filing the Law Enforcement

9  Complaint, the Complaint constitutes substantial compliance with the GCA.  (Id.)  In the

10  alternative, Plaintiffs argue, the Law Enforcement Complaint constitutes a claim as

11  presented under the GCA.  (Id. at 11.)

12          Accordingly, this Order addresses only the narrow issue of whether the Law

13  Enforcement Complaint constitutes substantial compliance with the GCA or a claim as

14  presented under the GCA, in light of Plaintiffs' new allegation that the original Complaint

15  in this lawsuit was not served on Defendants until December 19, 2011.

16

17          **B.      Request for Judicial Notice**

18

19          Defendant requests that the Court take judicial notice of three documents:

20  (1) Proofs of Service of Summons and Complaint on Defendants, filed by Plaintiffs in the

21  Amador County Superior Court on December 28, 2011; (2) this Court's July 6, 2012,

22  Order granting Defendant's Motion to Dismiss Plaintiff's Complaint; and (3) this Court's

23  October 17, 2012, Order granting Defendant's Motion to Dismiss Plaintiff's First

24  Amended Complaint.  "As a general rule, 'a district court may not consider any material

25  beyond the pleadings in ruling on a Rule 12(b)(6) motion.'"  Lee v. City of L.A., 250 F.3d

26  668, 688 (9th Cir. 2001) (quoting Branch v. Tunnell, 14 F.3d 449, 453 (9th Cir. 1994),

27  overruled on other grounds by Galbraith v. Cnty. of Santa Clara, 307 F.3d 1119 (9th Cir.

28  2002)).

1    Under Federal Rule of Evidence 201, "[a] judicially noticed fact must be one not subject

2    to reasonable dispute in that it is either (1) generally known within the territorial

3    jurisdiction of the trial court or (2) capable of accurate and ready determination by resort

4    to sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201.

5    Pursuant to Rule 201, courts may take judicial notice of "undisputed matters of public

6    record."  Lee, 250 F.3d at 688.

7         Proofs of service filed in state courts and within the same action are properly

8    subject to judicial notice.  See, e.g., Fed. Home Loan Mortg. Corp. v. Vargas, 2011 WL

9    4629017, at *1 n.2 (E.D. Cal. Oct. 3, 2011).  Because the Proofs of Service of Summons

10   and Complaint on Defendants are "capable of accurate and ready determination by

11   resort to sources whose accuracy cannot reasonably be questioned," judicial notice of

12   these documents is proper.  Accordingly, the Court hereby takes judicial notice of the

13   documents contained in Exhibit A to Defendant's Motion to Dismiss.

14        The second and third documents which Defendants request the Court judicially

15   notice are this Court's own orders in this same case.  (ECF Nos. 17, 25.)  As such, these

16   documents and their contents are already properly before the Court, and judicial notice

17   is not necessary.  Accordingly, Defendants' request for judicial notice is denied as to

18   these documents.

19

20        C.    The Law Enforcement Complaint

21              1.    The GCA

22

23        Before bringing suit for "money or damages" against a public entity, the GCA

24   requires "the timely presentation of a written claim and the rejection of the claim in whole

25   or in part."  Mangold v. Cal. Pub. Utils. Comm'n, 67 F.3d 1470, 1477 (9th Cir. 1995); see

26   also Cal. Gov't Code §§ 905, 945.4.

27   ///

28   ///

1  Claims must also be presented prior to bringing suit against a public employee who

2  allegedly caused injury while acting within the scope of his or her employment.  Briggs v.

3  Lawrence, 230 Cal. App. 3d 605, 612-13 (1991).

> 4  T]he claims-presentation requirements serve two basic
> purposes:  First, they give the governmental entity an
> 5  opportunity to settle just claims before suit is brought.
> Second, they permit the entity to make an early investigation
> 6  of the facts on which a claim is based, thus enabling it to
> defend itself against unjust claims and to correct the
> 7  conditions or practices which gave rise to the claim.

8  Lozada v. City of S.F., 145 Cal. App. 4th 1139, 1151 (2006) (internal citations and

9  quotations omitted).  A plaintiff must allege facts demonstrating either compliance with

10  the GCA requirements or an excuse for non–compliance as an essential element of the

11  cause of action.  California. v. Sup. Ct., (Bodde), 32 Cal. 4th 1234, 1243 (2004).  Failure

12  to allege compliance or an excuse for noncompliance constitutes a failure to state a

13  cause of action and must result in dismissal of such claims.  Id.

14

15              **2.      Substantial Compliance with the GCA**

16

17  Because the GCA is "designed to protect governmental agencies from stale and

18  fraudulent claims, provide an opportunity for timely investigation, and encourage settling

19  meritorious claims," the statute should "not be used as [a] trap[] for the unwary when [its]

20  underling purposes have been satisfied."  Johnson v. San Diego Unified Sch. Dist.,

21  217 Cal. App. 3d 692, 697 (1990) (citing Jamison v. California, 31 Cal. App. 3d 513, 518

22  (1973)).  "Consequently, the courts employ a test of substantial compliance, rather than

23  strict compliance, in determining whether the plaintiff has met the filing requirements of

24  the [GCA]."  Id. (citing City of San Jose v. Sup. Ct., 12 Cal. 3d. 447, 456-57 (1974)).  The

25  doctrine of substantial compliance applies "where there has been an attempt to comply

26  [with the GCA] but the compliance is defective . . . ."  Id.

27  ///

28  ///

11

1  Courts must therefore "ask whether sufficient information is disclosed on the face of the

2  filed claims 'to reasonably enable the public entity to make an adequate investigation of

3  the merits of the claim and to settle it without the expense of a lawsuit.'" Id.

4       Plaintiffs contend that their November 8, 2011, Law Enforcement Complaint

5  substantially complied with the GCA requirements.  (ECF No. 26 at 8.)  As noted by the

6  Court in its two previous orders, this argument is flawed.  GCA claims are required to be

7  filed and either "acted upon . . . or . . . deemed to have been rejected" by the public

8  entity before a suit is permitted to proceed.  Cal. Gov't Code § 945.4.  A complaint is

9  "deemed to have been rejected" forty-five days after the claim is presented.  Cal. Gov't

10  Code § 912.4(c).  Plaintiffs have alleged no facts indicating that Defendants either acted

11  upon the Law Enforcement Complaint or that it was it was deemed rejected by

12  Defendants at any time prior to filing their original Complaint in this case.  Because the

13  Law Enforcement Complaint was purportedly filed only one day prior to the initiation of

14  the instant litigation, it is unclear how the Law Enforcement Complaint could have served

15  the purposes underlying the GCA.  See supra.  The single day separating Plaintiffs' filing

16  of the Law Enforcement Complaint and the filing of the original Complaint in this lawsuit

17  gave Defendants no time to "make an adequate investigation of the merits of the claim

18  and to settle it without the expense of a lawsuit."  Johnson, 217 Cal. App. 3d at 697.

19       The fact that Defendants were not served with the original Complaint in this case

20  until December 16, 2011, does not change the analysis.  Defendants were served in this

21  case thirty-eight days after the Law Enforcement Complaint was filed, and thus the

22  requisite forty-five day period had not lapsed when Defendants were served.  Thus, even

23  with this additional allegation, it is clear that Plaintiff's Law Enforcement Complaint was

24  not "acted upon . . . or . . . deemed to have been rejected by the public entity before" the

25  instant litigation proceeded, or before Defendants were served.  The present case thus

26  contrasts sharply with Cory v. City of Huntington Beach, which Plaintiffs cite in support of

27  their contention that they have complied with the GCA.

28  ///

1   In that case, the California Court of Appeal allowed a tort suit to go forward although the

2   lawsuit was filed only two days after the plaintiff had filed his tort claim.  43 Cal. App. 3d

3   131, 136 (Cal. Ct. App. 1974).  The Court of Appeal noted that although the time for

4   rejecting the claim had not expired before the lawsuit was filed, the time for rejecting the

5   claim expired before the defendants were served.  Id. Thus, the "defect had ceased to

6   exist before the [defendant] was even formally notified that the suit had been brought."

7   Id.  Such is not the case here, where the forty-five day period had not passed before

8   Defendants were served.

9          Furthermore, to meet the test for substantial compliance, there must be "some

10   compliance with all of the statutory requirements."  Del Real v. City of Riverside,

11   95 Cal. App. 4th 761, 769 (2002); see also City of San Jose, 12 Cal. 3d at 456-57.  "The

12   doctrine of substantial compliance . . . cannot cure total omission of an essential element

13   from the claim or remedy a plaintiff's failure to comply meaningfully with the statute."

14   Loehr v. Ventura Cnty. Comm. Coll. Dist., 147 Cal. App. 3d 1071, 1083 (Cal. Ct. App.

15   1983).  An assertion of money damages is an essential element of a claim under

16   Government Code section 910.  Id. at 1082; Cal. Gov't Code § 910.  Section 910(f)

17   specifically provides that:

18              a claim shall be presented by the claimant or by a person
                acting on his behalf and shall show all of the following: . . .
19              [t]he amount claimed if it totals less than ten thousand dollars
                ($10,000) as of the date of presentation of the claim . . .
20              together with a basis of computation of the amount claimed.
                If the amount claimed exceeds ten thousand dollars
21              ($10,000), no dollar amount shall be included in the claim.
                However, it shall indicate whether the claim would be a
22              limited civil case.

23   Section 915 also requires that the claim be presented to the clerk, secretary, or auditor

24   of the relevant public entity.

25          In this case, Plaintiffs' Law Enforcement Complaint does not constitute substantial

26   compliance with the GCA, as it does not assert any right to money damages.  The Law

27   Enforcement Complaint also includes no estimate of any injury, damage, or loss,

28   prospective or otherwise.

13

1    Because the Law Enforcement Complaint omits this essential element of Section 910, it

2    cannot constitute substantial compliance with the GCA.  Additionally, as noted in the

3    Court's previous two orders, nothing in the Complaint presently before the Court

4    indicates that the Law Enforcement Complaint was served on the proper parties as

5    required by Section 915 of the California Government Code.  Although Plaintiffs cite to

6    cases in which a prematurely filed complaint did not require dismissal of the complaint

7    (see ECF No. 28 at 8), these cases are distinguishable from the present case.  In each,

8    the Court found that there was substantial compliance with the GCA.  In this case,

9    however, there has not been substantial compliance, as the Law Enforcement Complaint

10    omits an essential element of a claim under the GCA—an assertion of a right to money

11    damages.

12        In sum, Plaintiffs' Law Enforcement Complaint fails to meet the requirements for

13    substantial compliance with the GCA, and the doctrine of substantial compliance cannot

14    save Plaintiffs' state law claims from dismissal.

15

16               **3.**       **Claim as Presented**

17

18        Plaintiffs also argue that the Law Enforcement Complaint constitutes a claim as

19    presented under the GCA, and thus saves their state law claims from dismissal.  "A

20    claim that fails to substantially comply with sections 910 and 910.2 may still be

21    considered a 'claim as presented' if it puts the public entity on notice both that the

22    claimant is attempting to file a valid claim and that litigation will result if the matter is not

23    resolved."  Del Real, 95 Cal. App. 4th at 769 (citing Alliance Financial v. City of S.F.,

24    64 Cal. App. 4th 635, 643-44 (Cal. Ct. App. 1998); Green v. State Center Comm. Coll.

25    Dist., 34 Cal. App. 4th 1348, 1358 (Cal. Ct. App. 1995)); see also Phillips v. Desert

26    Hosp. Dist., 49 Cal. 3d 699, 709 (1989) (A "'claim as presented' is a document that

27    "discloses the existence of a 'claim,' which, if not satisfactorily resolved, will result in a

28    lawsuit against the entity.").

1    If the public entity determines that "the claim as presented" does not substantially comply

2    with the requirements for presenting a claim, and is therefore defective, the public entity

3    may either "give written notice of [the claim's] inefficiencies, stating with particularity the

4    defects or omissions therein" within twenty days, or waive any defense "as to the

5    sufficiency of the claim based upon a defect or omission in the claim as presented."

6    Phillips, 49 Cal. 3d at 707 (quoting Cal. Gov't Code § 911).

7          Examination of the Law Enforcement Complaint (ECF No. 26-1) reveals that it

8    gives no notice of a compensable claim which, if not otherwise satisfied, will result in

9    litigation.  See Phillips, 49 Cal. 3d at 710 ("[T]he relevant inquiry is . . . whether [Plaintiffs'

10   notice] disclosed to the [defendant] that they had a claim against it which, if not

11   satisfactorily resolved, would result in their filing a lawsuit."]).  As set forth above, the

12   Law Enforcement Complaint contains no demand for money, no estimate of any alleged

13   monetary damages, or any request for relief of any kind.  There is also no assertion that

14   litigation may result.  Plaintiffs thus fail to meet the basic requirement of showing that the

15   Law Enforcement Complaint "accomplished the two principal purposes of a sufficient

16   claim," namely affording Defendants "the opportunity to make a prompt investigation . . .

17   and [giving Defendants] the opportunity to settle without suit . . . ."  Phillips, 49 Cal. 3d at

18   710 (citing Foster v. McFadden, 30 Cal. App. 3d 943, 949 (1973)).  Accordingly, the Law

19   Enforcement Complaint does not constitute a "claim as presented."

20         As above, Plaintiffs' allegations regarding when Defendants were served in the

21   instant action in no way alter the analysis.  The date on which Defendants were served

22   does not change the fact that the Law Enforcement Complaint contains no assertion that

23   litigation may result, and likewise contains no demand for money, no estimate of any

24   alleged monetary damages, or any request for relief of any kind.  Accordingly, the

25   additional allegations included in the Second Amended Complaint do not save Plaintiffs'

26   state causes of action from dismissal.

27   ///

28   ///

15

1

**CONCLUSION**

2

3        As set forth above, Plaintiffs have failed to demonstrate that they have complied

4   with the GCA.  Accordingly, Defendants' Motion to Dismiss the state law claims of

5   Plaintiffs' Second Amended Complaint (ECF No. 27) is GRANTED without leave to

6   amend.

7        IT IS SO ORDERED.

8

9   Dated:  March 1, 2013

10

11   _____

12   MORRISON C. ENGLAND, JR., CHIEF JUDGE
     UNITED STATES DISTRICT JUDGE

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28